U.S. DISTRICT COURT – N.D. OF N.Y.

**FILED**

**Sep 14 - 2021**

AT **12** O'CLOCK **56** MINUTES
John M. Domurad, Clerk

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**MARK E.,**

                              **Plaintiff,**

        **v.**                                          **8:20-CV-425**
                                                        **(FJS)**
**DR. KILOLO KIJAKAZI, Acting Commissioner**
**of the Social Security Administration,**

                              **Defendant.¹**
_____

**APPEARANCES**                          **OF COUNSEL**

**ANDERSON LAMB &**                      **ARTHUR P. ANDERSON, ESQ.**
**ASSOCIATES PC**
P.O. Box 1624
Burlington, Vermont 05402-1624
Attorneys for Plaintiff

**JARVIS & MODUN, LLP**                  **CRAIG ANTHONY JARVIS, ESQ.**
P.O. Box 4590
Burlington, Vermont 05406
Attorneys for Plaintiff

**SOCIAL SECURITY ADMINISTRATION**       **CHRISTOPHER L. POTTER, ESQ.**
J.F.K. Federal Building, Room 625
15 New Sudbury Street
Boston, Massachusetts 02203
Attorneys for Defendant

**SCULLIN, Senior Judge**

---

¹ Dr. Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration on July 9, 2021.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Dr. Kijakazi is automatically substituted as Defendant in this matter.

# I. INTRODUCTION

Plaintiff brought this action pursuant to the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of Defendant Commissioner denying his application for Disability Insurance, *i.e.* Title II, benefits.  *See generally* Dkt. Nos. 1, 13.  Pending before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  *See* Dkt. Nos. 13, 17.

# II. BACKGROUND

Prior to filing his current claim, Plaintiff, had claimed Title II benefits on September 19, 2013, with an alleged onset date of July 3, 2010.  *See* Dkt. No. 11, Administrative Record ("AR"), at 15.[2]  Administrative Law Judge ("ALJ") Arthur Patane denied Plaintiff's prior claim on September 15, 2016.  *See id.*  Plaintiff did not appeal that decision.  *See id.*  Attorney David C. Buran represented Plaintiff with regard to his prior claim.  *See id.* at 59.

Plaintiff brought his current claim for Disability Insurance benefits on January 19, 2017, alleging disability beginning on September 7, 2016.  *See id.* at 15.  On April 11, 2017, the agency rejected Plaintiff's claim.  *See id.*  On April 26, 2017, Plaintiff timely filed a written request for a hearing before an ALJ.  *See id.*  ALJ Sparks held a video hearing on October 22, 2018, at which Plaintiff, represented by Attorney Craig A. Jarvis, appeared as did Rachel A. Duchon, a vocational expert.  *See id.*

---

[2] All references to page numbers of documents in the record, except for the Administrative Record are to the page numbers that the Court's Electronic Case Filing system generates, which appear in the top right corner of those pages.  All references to page numbers of the Administrative Record are to the Bate Stamp numbers, which appear in the bottom right corner of those pages.

On January 29, 2019, ALJ Sparks issued a written decision in which she made the

following findings "[a]fter careful consideration of all the evidence . . .":

(1) Plaintiff "last met the insured status requirements of the Social
Security Act on September 30, 2016";

(2) Plaintiff "did not engage in substantial gainful activity during
the period from September 16, 2016 through his date last insured
of September 30, 2016";

(3) Plaintiff "had the following severe impairments:
spondyloarthropathy, fibromyalgia, and gout";

(4) Plaintiff "did not have an impairment or combination of
impairments that met or medically equaled the severity of one of
the listed impairments in 20 CFR Part 404, Subpart P, Appendix
1";

(5) Plaintiff "had the residual functional capacity to perform light
work as defined in 20 CFR 404.1567(b) except that he could sit for
one hour at a time and up to six hours in an eight-hour workday,
stand for 30 minutes at a time and up to four hours in an eight-hour
workday, walk for 30 minutes at a time and up to four hours in an
eight-hour workday, [and] lift and carry up to 10 pounds
frequently" through the date last insured.  He could "reach
continuously, but never crouch, kneel, crawl, or climb ladders or
scaffolds";

(6) Plaintiff "was unable to perform any past relevant work"
through the date last insured;

(7) Plaintiff "was born on April 21, 1967 and was 49 years old,
which is defined as a younger individual age 18-49, on the date last
insured";

(8) Plaintiff "has at least a high school education and is able to
communicate in English";

(9) "Transferability of job skills is not material to the
determination of a disability because using the Medical-Vocational
Rules as a framework supports a finding that [Plaintiff] is 'not
disabled', whether or not [Plaintiff] has transferable job skills"; and

(10) "Through the date last insured, considering [Plaintiff]'s age,
education, work experience, and residual functional capacity, there

> were jobs that existed in significant numbers in the national
> economy that [Plaintiff] could have performed."

*See id.* at 17-22 (citations omitted).

Plaintiff requested review of the ALJ's decision from the Appeals Council, which denied his request on February 7, 2020.  *See id.* at 1.  Plaintiff then timely filed this action on April 10, 2020, seeking review of Defendant's final decision to deny his disability claim.  *See* Dkt. No. 1. Plaintiff filed a supporting brief on September 30, 2020, *see* Dkt. No. 13; and Defendant filed a responsive brief on November 20, 2020, *see* Dkt. No. 17.

In support of his motion, Plaintiff argues that the ALJ (1) committed reversible legal error by failing to consider whether he was disabled prior to September 16, 2016; (2) impermissibly substituted her own judgment for expert opinion when considering his gross and fine manipulative abilities; (3) failed to elicit testimony from the vocational expert about alleged inconsistencies between her opinion and the vocational literature; (4) failed to elicit statistics on regional job availability from the vocational expert; and (5) failed to develop the transcript properly such that it is unclear whether a hypothetical she posed to the vocational expert featured the same residual functional capacity that she had assessed to him.  *See* Dkt. No. 13 at 1-2. Plaintiff claims that all of these errors are harmful and, thus, remand is required.  *See id.* at 2.


### III. DISCUSSION

#### A.      Standard of review

Absent legal error, a court reviewing the Commissioner's final decision will uphold that decision if there is substantial evidence in the record to support it.  *See* 42 U.S.C. § 405(g). Substantial evidence entails "'more than a mere scintilla'" of evidence and "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson v.*

*Perales*, 402 U.S. 389, 401 (1971) (quotation omitted).  Accordingly, a reviewing court "'may not substitute [its] own judgment for that of the [Commissioner], even if [it] might justifiably have reached a different result upon a *de novo* review.'"  *Cohen v. Comm'r of Soc. Sec.*, 643 F. App'x 51, 52 (2d Cir. 2016) (summary order) (quoting *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984)).  In other words, "[t]he substantial evidence standard means once an ALJ finds facts, [a reviewing court] can reject those facts 'only if a reasonable factfinder would *have to conclude otherwise*.'"  *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (quotation and other citation omitted).

To qualify for Social Security disability benefits, a claimant must show that he suffers from a disability within the meaning of the Act.  An individual is considered disabled when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A).  Substantial gainful activity ("SGA") is "work activity that involves doing significant physical or mental activities . . . for pay or profit."  20 C.F.R. § 404.1572(a)-(b).  To determine if a claimant has sustained a disability within the meaning of the Act, the ALJ follows a five-step process:

> (1) The ALJ first determines whether the claimant is currently engaged in SGA; if so, the claimant is not disabled.  *See* C.F.R. §§ 416.920(b), 416.972.
>
> (2) If the claimant is not engaged in SGA, the ALJ determines if the claimant has a severe impairment or combination of impairments; if not, the claimant is not disabled.  *See* C.F.R. § 416.920(c).
>
> (3) If the claimant has a severe impairment, the ALJ determines if the impairment meets or equals an impairment found in the

appendix to the regulations (the "Listings"). If so, the claimant is disabled. *See* 20 C.F.R. § 416.920(d).

(4) If the impairment does not meet the requirements of any impairment in the Listings, the ALJ determines if the claimant can perform his past relevant work. *See* 20 C.F.R. § 416.920(e), (f). If so, the claimant is not disabled. *See* 20 C.F.R. § 416.920(f).

(5) If the claimant cannot perform his past relevant work, the ALJ determines if he can perform other work, in light of his RFC, age, education, and experience. *See* 20 C.F.R. § 416.920(f), (g). If so, the claimant is only entitled to receive benefits if he cannot perform any alternative gainful activity. *See id.*

For this test, the burden of proof lies with the claimant for the first four steps but shifts to the Commissioner for the fifth step if the analysis proceeds that far. *See Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998) (citation omitted).

**B.    ALJ's residual functional capacity finding**

In reaching her RFC determination, ALJ Sparks first set forth the two-step process that ALJs must follow to evaluate a claimant's symptoms. *See* AR at 19. The ALJ accorded weight to the opinions of G. Mark Coleman, OTR/L, Bonita Libman, M.D., and Kevin McCullum, M.D. *See id.* at 20-21. She also noted that, during the period at issue in September 2016, Plaintiff only had one medical appointment -- a scheduled follow-up with a rheumatologist -- and that she would weigh the opinions of these experts against the applicable findings of this particular evaluation. *See id.* at 20. None of the experts whose opinions the ALJ accorded weight examined Plaintiff during the period at issue. *See id.*

The ALJ afforded Mr. Coleman's opinion "significant weight" because it was based on his personal examination of Plaintiff in July 2016. *See id.* at 20. Specifically, Mr. Coleman performed a functional capacity evaluation ("FCE"). *See id.* Mr. Coleman found that Plaintiff

was functioning at a "sedentary-light" work capacity based on Department of Labor guidelines. *See id.* However, ALJ Sparks noted that "the medical record for the period at issue in this decision [did] not fully support the extent of the limitations assessed by Mr. Coleman." *See id.*

The ALJ also gave "significant weight" to the opinion of Dr. McCullum, Plaintiff's primary care physician, who agreed with Mr. Coleman's assessment without exception. *See id.* at 20-21.

Finally, the ALJ afforded Dr. Libman's opinion "greater weight" insofar as it agreed with Mr. Coleman's with regard to Plaintiff's postural restrictions, but otherwise the ALJ granted her opinion "significant weight." *See id.* at 21. Dr. Libman, one of Plaintiff's treating rheumatologists, had recommended greater postural restrictions than Mr. Coleman had, but ALJ Sparks found that these enhanced restrictions conflicted with the findings of the relevant September 2016 examination. *See id.* at 21. In particular, Dr. Libman advised that Plaintiff was precluded from stooping, which would render transitions from standing to sitting difficult. *See id.* ALJ Sparks did not find merit in this specific preclusion but ultimately agreed that Plaintiff could not be expected to climb ladders or scaffolds, crouch, kneel or crawl. *See id.*

Plaintiff alleged that he was limited to 20 minutes of standing, 10 minutes of walking, or 15 minutes of sitting in a normal chair; he could also sit for 30 minutes in a chair that was partially reclined. *See id.* at 19. After this period of sitting, he would need to stand and walk around for approximately 10 minutes before he could sit again. *See id.* He also alleged hand pain that prevented him from holding onto utensils, using a pen or pencil, picking up objects, or grasping objects such as broom handles or steering wheels for more than 10 to 20 minutes. *See id.* Finally, he alleged that he had left shoulder limitations that restricted his capacity for reaching. *See id.*

ALJ Sparks found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, she did not find that Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms to be consistent with medical and other evidence in the record.  *See id.* at 19.  In addition, she found that the medical evidence "partially supported" Plaintiff's allegations, but not entirely.  *See id.* at 21.

Finally, ALJ Sparks noted that, although Plaintiff's condition appeared to have worsened by December 2016, there was nothing in the record to indicate that any worsening occurred before Plaintiff's date last insured.  *See id.* at 20.  ALJ Sparks also noted that the period at issue was "rather brief" and that, as a result, the medical evidence for that period was limited.  *See id.* at 20-21.  However, based on the evidence for the weeks in question, ALJ Sparks concluded that Plaintiff failed to demonstrate any worsening between the previous ALJ's decision and Plaintiff's date last insured.  *See id.*

## C.    ALJ's refusal to consider evidence prior to September 16, 2016

"Under SSA policy, if a determination or decision on a disability claim has become final, the Agency may apply administrative res judicata with respect to a subsequent disability claim under the same title of the Act if the same parties, facts and issues are involved in both the prior and subsequent claims."  *Effect of Prior Findings on Adjudication of a Subsequent Disability Claim Arising Under the Same Title of the Social Security Act -- Titles II & XVI of the Social Security Act*, AR 98-4(6), 1998 WL 283902, *2 (June 1, 1998).  However, this *res judicata* effect does not apply to any unadjudicated period.  *See id.*

Administrative *res judicata* applies where a prior determination on the same facts and issues has become final, either through administrative or judicial action.  *See Navan v. Astrue,*

303 F. App'x 18, 19-20 (2d Cir. 2008) (summary order) (citing 20 C.F.R. § 404.957(c)(1)).  In

*Navan*, the Commissioner affirmed, upon reconsideration, the initial denial of the plaintiff's

application for Social Security benefits on May 12, 1997; the plaintiff did not seek a hearing

before an ALJ but, instead, proceeded to file another claim with the same alleged onset date.  *See*

*id.* at 20.  The Second Circuit held that the ALJ considering the second claim correctly refused to

consider the plaintiff's disability status on or before May 12, 1997, based on *res judicata*.  *See id.*

Although ALJs are not required to consider evidence from past adjudications, they may

do so at their discretion.  *See James N. v. Comm'r of Soc. Sec.*, No. 3:18-CV-1324 (CFH), 2020

WL 1140498, *5 (N.D.N.Y. Mar. 6, 2020) (citations omitted).  The *James N.* court noted that

this discretion is particularly broad where there is "sufficient evidence" from the time after the

alleged onset date and where there is no evidence that a claimant's condition has worsened since

the alleged onset date.  *See id.*  Applying *res judicata* to preclude issues is proper "where

claimant has failed to offer 'new and material evidence . . .  which is of sufficient weight that it

may result in a different determination.'"  *Bessette v. Comm'r of Soc. Sec.*, No. 09-CV-735

(TJS/DRH), 2010 WL 5677184, *4 (quoting *Leviner v. Richardson*, 433 F.2d 1338, 1343 (4th

Cir. 1971)).

In general, "federal courts lack jurisdiction to review an administrative decision not to

reopen a previous claim for benefits."  *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003)

(citing *Califano v. Sanders*, 430 U.S. 99, 107-09, 97 S. Ct. 980, 51 L. Ed. 2d 192 (1977)).  This

is chiefly because such a decision lacks finality for purposes of § 405(g) of the Act.  *See id.* at

180 (citing *Latona v. Schweiker*, 707 F.2d 79, 81 (2d Cir. 1983)).  There are two exceptions to

this general rule: (1) "where the Commissioner has constructively reopened the case" and (2)

"where the claimant has been denied due process."  *Id.*

An ALJ constructively reopens a case when she "'reviews the entire record and renders a decision on the merits[.]'"  *Id.* (quotation and other citations omitted).  In such circumstances, "'the earlier decision will be deemed to have been reopened, and any claim of administrative res judicata to have been waived[.]'"  *Id.* (quoting *Malave v. Sullivan*, 777 F. Supp. 247, 251-52 (S.D.N.Y. 1991) (citing *Coup v. Heckler*, 834 F.2d 313, 317 (3d Cir. 1987) and *McGowan v. Harris*, 666 F.2d 60, 65-67 (4th Cir. 1981))) (other citations omitted).

Due process claims are especially pertinent in Social Security disability cases where the disability from which the applicant claims to be suffering is one that would deprive him "'of the ability to understand or act upon notice of available administrative procedures.'"  *Canales v. Sullivan*, 936 F.2d 755, 758 (2d Cir. 1991) (quotation omitted).

Under the Social Security Administration's interpretation of the doctrine of administrative *res judicata*, Plaintiff is barred from claiming disability during a period that has already been adjudicated against him because a new agency adjudication is not a substitute for an appeal.  *See Navan*, 303 F. App'x at 19-20.  Thus, the Court finds that ALJ Sparks was justified in dismissing his claim to any benefits from his alleged onset date of September 7, 2016, through the date of ALJ Patane's decision on September 15, 2016.  *See* AR at 15.

Plaintiff alleges that ALJ Sparks impermissibly narrowed the scope of her consideration because of the prior ALJ's decision.  *See* Dkt. No. 13 at 19.  He further argues that there is "new and material evidence" pertaining to a period that was previously adjudicated; and, thus, "a new decision may be made for that period of disability."  *See id.* at 16 (citing [SSR 68-12a]) (other citation omitted).  Although Plaintiff is correct that ALJs "may" reopen past adjudications if they so choose, *see Califano v. Sanders*, 430 U.S. 99, 107-09 (1977), they are not obligated to do so.

*See id.*  Moreover, district courts cannot reverse the ALJ's decision not to reopen.  *See id.*;
*Latona v. Schweiker*, 707 F.2d 79, 81 (2d Cir. 1983).

Plaintiff also alleges that he has presented "new and material evidence" in the form of the
opinions of Drs. Libman and McCullum.  *See* Dkt. No. 13 at 19.  However, this evidence is not
"new" in the proper sense.  "New" evidence is "evidence *from that time period* that was not
considered by the Agency when adjudicating that prior application[.]"  *LaFave v. Comm'r of Soc.
Sec.*, No. 7:16-CV-0621 (GTS), 2017 WL 4011264, *9 (N.D.N.Y. Sept. 11, 2017) (emphasis
added).  Plaintiff's "new evidence" consists of two documents created in November and
December 2016, after ALJ Patane rendered his decision and after Plaintiff's date last insured.
*See* AR at 20.  Moreover, even if this evidence could be considered "new," this Court is not
bound to consider it as such because there is no cause for the failure to incorporate the evidence
into the record during the prior hearing.  *See Aubeuf v. Schweiker*, 649 F.2d 107, 116 (2d Cir.
1981) (quoting 42 U.S.C.A. § 405(g) (Sept. 1980 Supp.)).  Mr. Coleman examined Plaintiff in
July 2016, before ALJ Patane's decision; and Plaintiff has not provided any rationale for waiting
nearly six months to solicit opinions from Drs. Libman and McCullum.  *See* AR at 20.  Plaintiff
could also have had the Appeals Council consider this evidence if he had appealed ALJ Patane's
decision; however, he chose not to do so.  *See* AR at 15.  Thus, the Court finds that Dr. Libman's
and Dr. McCullum's opinions are not "new and material evidence" in the sense that would
require ALJ Sparks to reconsider ALJ Patane's decision.

Alternatively, even if the Court were to find that Plaintiff's evidence was "new and
material," *res judicata* would still apply because such evidence is insufficient to change the
outcome.  *See Bessette*, 2010 WL 5677184, at *4 (quotation omitted).  ALJ Sparks considered
the opinions of Drs. Libman and McCullum with regard to Plaintiff's new claim, albeit without

most of the evidence prior to 2016; and she, nonetheless, concluded that those opinions did not support a finding of disability.  *See* AR at 21.

Furthermore, although Plaintiff does not expressly request that the Court order a reopening of the prior claim on remand, Plaintiff implicitly argues for this outcome by stating, "Neither the finality [of ALJ Patane's decision] nor the doctrine of administrative *res judicata* prevents [ALJ Sparks] from considering whether Plaintiff was disabled prior to September 16, 2016."  *See* Dkt. No. 13 at 16.  Due to the *res judicata* effects of ALJ Patane's decision, as discussed above, a reopening is Plaintiff's only avenue to force consideration of evidence prior to that decision.  Generally, federal courts do not have jurisdiction to review an ALJ's decision not to reopen a prior adjudication.  *See Byam*, 336 F.3d at 179 (citation omitted).  Although there are exceptions to this rule for cases in which the prior adjudication has been constructively reopened or where a claimant was denied due process, *see id.* at 180, Plaintiff has not alleged, and the evidence does not support, that either of these exceptions exist.

Accordingly, for all the above-stated reasons, the Court finds that ALJ Sparks did not err in refusing to consider all evidence from before September 16, 2016.


**D.      ALJ's evaluation of opinion evidence**

An ALJ generally cannot substitute her opinion for that of medical experts.  *See Balsamo*, 142 F.3d at 81.  However, an ALJ is free to choose between medical opinions.  *See McBrayer v. Sec'y Health & Human Svcs.*, 712 F.2d 795, 799 (2d Cir. 1983) (quoting *Gober v. Matthews*, 574 F.2d 772, 777 (3d Cir. 1978)) (other citation omitted).  Even if an ALJ's conclusion does not perfectly align with any of the medical opinions in the record, the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."

*Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order) (citing *Richardson v. Perales*, 402 U.S. 389, 399, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971) ("We therefore are presented with the not uncommon situation of conflicting medical evidence.  The trier of fact has the duty to resolve that conflict.")).

An ALJ can give less or no weight to medical opinions when the substantive medical evidence in the record does not support them.  *See Orts v. Astrue*, No. 5:11-512, 2012 WL 6803588, *5 (N.D.N.Y. Nov. 14, 2012) (footnote omitted).  So long as there is substantial evidence in the record to support an ALJ's decision, the court must sustain that decision "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the Commissioner's."  *Michael G. v. Comm'r of Soc. Sec.*, No. 5:20-CV-605 (CFH), 2021 WL 2457637, *3 (N.D.N.Y. June 16, 2021) (quoting *Rosado v. Sullivan*, 803 F. Supp. 147, 153 (S.D.N.Y. 1993)).

Administrative legal error is harmless and, thus, does not merit remand, when the ALJ would have reached the same result had the error not occurred.  *See Snyder v. Colvin*, No. 5:13-cv-585 (GLS/ESH), 2014 WL 3107962, *4 (N.D.N.Y. July 8, 2014), *accepting rep.-rec. dated May 21, 2014*, (citing *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("[W]here application of the correct legal principles to the record could lead to only one conclusion, there is no need to require agency reconsideration)).

ALJ Sparks primarily based her decision regarding Plaintiff's RFC on his September 19, 2016 examination with his rheumatologist.  *See* AR at 20.  This is the only examination in the record that occurred between ALJ Patane's decision and Plaintiff's date last insured.  *See id.*  At this appointment, Plaintiff reported "some soreness" in his hands and fingers, but a physical examination was largely normal.  *See id.*  ALJ Sparks also considered the opinions of Mr.

Coleman and Drs. Libman and McCullum, all of whom agreed that Plaintiff could only occasionally engage in gross and fine manipulation.  However, she did not credit them because none of the medical evidence from the period in question supported them.  Rather, they were based on Mr. Coleman's July 2016 examination of Plaintiff.  *See id.*; *see id.* at 611-18.

ALJ Sparks reasoned that the examination from the period in question did not support Plaintiff's allegations regarding manipulation and that Plaintiff had failed to prove worsening of those conditions since ALJ Patane had issued his decision.  *See id.*  For these reasons, she concluded that there was insufficient medical evidence to credit Plaintiff's allegation that he could only perform gross and fine manipulation occasionally.  *See id.*  She also noted that, even if she had credited those allegations, the vocational expert had still identified jobs suitable for a plaintiff with that alleged condition.  *See id.*

Despite Plaintiff's argument to the contrary, ALJ Sparks did not substitute her own opinion for any of the medical opinions in the record.  Rather, she chose not to credit those opinions because the medical evidence from the time period in question did not support them.  *See Orts*, 2012 WL 6803588, at *5.  This conclusion is not surprising given the extremely limited medical evidence from the two weeks in September 2016, which are at issue.  *See* AR at 20.  Notably, Mr. Coleman's examination took place both before ALJ Patane's decision and before Plaintiff's alleged disability onset date, both of which reduce its influence on the present claim.  *See id.*

Alternatively, assuming for the sake of argument that Plaintiff's assignment of error were correct, it would not alter the outcome of his claim and is, thus, harmless error.  *See Snyder*, 2014 WL 3107962, at *4.  ALJ Sparks explicitly stated that, even if she had accepted Plaintiff's allegations regarding his manipulative capabilities, she still would not have found him disabled.

*See* AR at 21.  Furthermore, Plaintiff does not dispute that the occupation of "counter clerk," as defined in the DOT, is still viable even with his alleged deficiencies with regard to reaching and manipulating objects.  *See* DOT #249.366-010.  This occupation exists in sufficient numbers in the national economy to satisfy Step Five of the analysis and results in a finding that Plaintiff is not disabled.  *See* AR at 52.

Accordingly, for all of these reasons, the Court finds that ALJ Sparks did not substitute her own opinion for that of the medical experts' opinions and that her evaluation of the medical and opinion evidence was permissible.


**E.     Alleged inconsistencies in vocational expert testimony**

ALJs have an affirmative duty to inquire into the consistency of vocational expert testimony with the DOT.  *See Razo v. Astrue*, No. 04 Civ. 1348 (PAC) (DF), 2008 WL 2971670, *5 (S.D.N.Y. July 31, 2008) (stating that, "[p]ursuant to Social Security Ruling 00-04p, the ALJ is required to '[i]dentify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs . . . and information in the [DOT]'" (quoting S.S.R. 00-04p)).  At a basic level, the ALJ can fulfill this duty by simply asking the vocational expert if there is any inconsistency.  *See id.*  However, the ALJ must resolve any apparent inconsistency even if the vocational expert does not raise the issue.  *See id.*

Not every apparent conflict is grounds for discrediting vocational expert testimony, and only conflicts that cannot be reasonably explained will put a vocational expert's credibility into question.  *See* SSR 00-04p  SSA policy is also controlling on ALJs in this regard; for example, ALJs cannot classify an occupation that clearly fits the regulatory definition of "medium" work as "light" work even if a vocational expert testifies to that effect.  *See id.* (citing 20 CFR

404.1567 and 416.967).  Moreover, vocational expert testimony can be used to supplement definitions in the DOT and, in particular, to provide insight where the DOT is silent.  *See Colvin v. Barryhill*, 734 F. App'x 756, 759 (2d Cir. 2018) (summary order) (citations omitted).

Plaintiff is correct that ALJ Sparks had a duty to find and resolve inconsistencies between the vocational expert's testimony and the DOT and the Selected Characteristics of Occupations ("SCO").  *See* Dkt. No. 13 at 20.  However, Plaintiff fails to allege any substantial unresolved inconsistencies.

With regard to the sit/stand option, the parties agree that the relevant reference materials are silent on this issue.  There is a circuit split on the consequence of this silence.  *See Gallegos v. Colvin*, No. 3:13cv393 (JBA), 2014 WL 4635418, *3 (D. Conn. Sept. 11, 2014) (collecting cases).  The *Gallegos* court noted that the Seventh Circuit, as well as the Southern District of New York, had found that there was no apparent contradiction when a vocational expert testified to a sit/stand option that the DOT did not mention.  *See id.* (citations omitted).  The court found that, by Contrast, the Third and Ninth Circuits had found that such a contradiction existed.  *See id.* (citations omitted).  In the former cases, the courts held that silence cannot contradict a vocational expert's statement.  *See, e.g., Wellington v. Astrue*, 2013 WL 1944472, *4 (S.D.N.Y. May 9, 2013) (holding that, "[b]ecause the DOT does not address the availability of a sit/stand option, it cannot contradict the vocational expert's testimony which endorsed such an option").  The Third and Ninth Circuits, however, assume, based on the DOT's definition of "sedentary" and "light" work in general, that sit/stand options do not exist unless they are explicitly referred to or in instances where the vocational expert can provide some rationale for their deviation from the general rule.  *See, e.g.*, *Coleman v. Astrue*, 423 F. App'x 754, 756 (9th Cir. 2011).

Courts within the Second Circuit are also split on this issue, and there is only one court in this District that has directly addressed this issue. *See Reisinger v. Comm'r of Soc. Sec.*, No. 7:16-CV-428 (ATB). 2017 WL 2198965, *9-*11 (N.D.N.Y. May 18, 2017). In *Reisinger*, the court endorsed the Seventh Circuit's view -- allowing reliance of vocational expert testimony where the DOT was silent -- despite consideration of meaningful authority to the contrary. *See id.* at *11 (citations omitted). In another case, *Lisa R. v. Comm'r of Soc. Sec.*, No. 5:18-CV-763 (ATB), 2020 WL 210273 (N.D.N.Y. Jan. 14, 2020), the court held that, even if the ALJ had erred because he did not seek an explanation from the vocational expert regarding a sit/stand option, the error was harmless because other cases in the Second Circuit had established the existence of a sit/stand option for the occupations in question. *See id.* at *8 (citations omitted).

Based on its review of the case law, the Court finds that silence does not create a conflict but merely a gap to be filled. The rationale behind vocational expert testimony would be very questionable if it only included reciting the DOT and provided nothing to the ALJ beyond exhaustive knowledge of the DOT. *Cf. Biestek v. Barryhill*, 139 S. Ct. 1148, 1152-53 (2019) (stating that vocational experts are entitled to base their opinions not only on publicly available resources but on their own relevant experience and other, non-public information).

With regard to the alleged inconsistency with regard to standing, walking, and lifting, it appears that Plaintiff's argument is that he cannot perform the counter clerk occupation because it is classified as light work and the hypotheticals in question included limitations that were more restrictive than the definition of light work. *See* Dkt. No. 13 at 20-21. This argument is unavailing. All that the DOT definition of the counter clerk occupation contains in this regard is a reference to the broad outlines of the potential demands of light work. *See* DOT #249.366-010. However, the classification of an occupation as "light" does not mean that all "light" occupations

- 17 -

require the same capacities but merely acts as a guideline.  The vocational expert is tasked with

navigating the nuances that inevitably arise when thousands of occupations are sorted into five

categories.  In this case, the vocational expert clearly recognized that Plaintiff could not perform

every job classified as "light" and, indeed, only named one.  *See* AR at 43.  Finally, it is clear

that the definition of "light" work that DOT #249.366-010 provides is sufficiently vague to

accommodate all of the limitations proposed in the hypotheticals in question.  Accordingly, the

Court finds that ALJ Sparks did not fail to address conflicts between the vocational literature and

the vocational expert's testimony.


**F.     Regional employment data**

The Second Circuit has not addressed the issue of whether a plaintiff must raise an

argument to an ALJ in order to raise it on appeal.  *See Pierce v. Astrue*, 946 F. Supp. 2d 296, 306

(W.D.N.Y. 2013).  However, "several district courts in this Circuit have held that '[t]he failure to

present an argument to the ALJ constitutes waiver of the right to raise it on appeal.'"  *Id.*

(quotation and other citations omitted); *see also Lewis v. Berryhill*, No. 3:16CV01091 (SALM),

2018 WL 1377303, *5 (D. Conn. Mar. 19, 2018) (quoting *Watson v. Astrue*, No. 08CV1523

(DAB) (JCF), 2010 WL 1645060, at *3 (S.D.N.Y. Apr. 22, 2010) (collecting cases)); (citing

*Haskins v. Comm'r of Soc. Sec.*, No. 5:05CV292, 2008 WL 5113781, at *16 (N.D.N.Y. Nov. 25,

2008) (finding argument waived where plaintiff questioned VE's qualification for the first time

before court "without allowing the ALJ the opportunity to inquire into the VE's knowledge and

experience"); *Harvey v. Astrue*, No. 5:05CV1094 (NAM), 2008 WL 4517809, at *15 (N.D.N.Y.

Sept. 29, 2008) ("Plaintiff's counsel did not challenge the basis for the vocational expert's

testimony and failed to raise any objection to the conduct of the ALJ until now.  Accordingly, the objections are forfeited.")) (other citation omitted).

Furthermore, although the Second circuit has not addressed whether the ALJ must consider regional job numbers, as well as national job numbers, district courts within this Circuit have determined that the ALJ may rely on either national or regional job numbers.  *See, e.g., Palacios v. Berryhill*, No. 17-cv-04802 (ALC), 2018 WL 4565141, *11 (S.D.N.Y. Sept. 24, 2018) (noting that "the regulations state that 'work exists in the national economy when it exists in significant numbers either in the region where you live or in several other regions in the country.  It does not matter whether . . . work exists in the immediate area where you live'" (quoting 20 C.F.R. § 404.1566(a)(1)); *Blake v. Colvin*, No. 2:14-cv-52-jmc, 2015 WL 3454736, *7 (D. Vt. May 29, 2015) (noting "[t]here is no requirement in the regulations that ALJs find that work exists in the particular state where the claimant lives"); *Schunk v. Colvin*, No. 11-CV-0670T, 2015 WL 471273, *8 (W.D.N.Y. Feb. 4, 2015) (noting that "[t]he controlling statutes and federal regulations suggest that the proper focus generally must be on jobs in the national, not regional, economy"); *Hamilton v. Comm'r of Soc. Sec.*, 105 F. Supp. 3d 223, 230 (N.D.N.Y. 2015) (agreeing with the defendant that "the Social Security regulations provide that the significant number of jobs may exist in the regional ***or*** national economy" (citing 20 C.F.R. §§ 404.1566, 416.966)); *McCusker v. Comm'r of Soc. Sec.*, No. 1:13-cv-1074 (GLS), 2014 WL 6610025, *3 (N.D.N.Y. Nov. 20, 2014) (stating that "the regulations provide that, in determining whether work exists in the national economy '[it] does not matter whether . . . [w]ork exists in the immediate area in which you live'" (quoting C.F.R. § 404.1566(a)(1))).  Other Circuits have reached the same conclusion.  *See, e.g., Lynn v. Colvin*, 637 F. App'x 495, 499 (10th Cir. 2016); *Beltran v. Astrue*, 700 F.3d 386, 389-90 (9th Cir. 2010).

Accordingly, the Court finds that Defendant met her burden of proof at Step Five by providing national job numbers and that she was not required to furnish regional job numbers.

**G.     Deficiency in the hearing transcript**

The transcript is missing a word, making it impossible to know the total number of hours the hypothetical person is able to stand in an 8-hour workday.  *See* AR at 49.  The ALJ asked the question in the context of past relevant work.  *See id.*  The parties do not dispute that Plaintiff is not able to engage in his past relevant work as a security guard.  However, the ALJ refers back to this description when posing future questions.  *See id.* at 50.

In *Tammie S. v. Barryhill*, No. 3:18-CV-174 (CFH), 2019 WL 859263, *8 (N.D.N.Y. Feb. 22, 2019), a small portion of a vocational expert's testimony was inaudible.  Magistrate Judge Hummel found that the error was harmless because it was so small, and it was part of a hypothetical on which the ALJ had not relied.  *See id.*  However, he noted, "the Court [might] have found otherwise if the inaudible portion [had] related to the hypothetical the ALJ relied on." *Id.*

In this case, Plaintiff cites two cases, both of which are distinguishable.  In *Scime v. Sec'y of Health & Human Servs.*, 647 F. Supp. 89, 90 (W.D.N.Y. 1986), *judgment rev. sub nom. Scime v. Bowen*, 822 F.2d 7 (2d Cir. 1987), the court noted that previously a district court had remanded for a new hearing because the entire transcript of the administrative hearing was inaudible.  In *Pratts v. Chater*, 94 F.3d 34 (2d Cir. 1996), the omission that merited remand was a "significant portion" of the medical testimony of the only doctor who testified at the hearing. *See id.* at 38.  The ALJ in *Pratts* stated, in his decision, that he had relied heavily on that doctor's testimony.  The Second Circuit found that, "[f]aced with such an incomplete record of [the

claimant's] hearing, [it] of course [could not] say that the ALJ's decision [was] supported by substantial evidence." *Id.* (citing Mimms, 750 F.2d at 186 (remanding for elicitation of information missing in transcript).

In this case, the Court must determine whether the one-word omission in the hearing transcript constitutes prejudicial error. As Defendant notes, there are additional hypotheticals, which involve different functional limitations, in the vocational expert's testimony. *See* AR at 51-53. The Court can infer that these limitations are both different from, and more restrictive than, the limitations given in the section containing the omission because the vocational expert identifies fewer potential occupations for a person with the new limitations. *See id.*

An ALJ can rely on a vocational expert's testimony only if it addresses the particular claimant with his unique capacities and limitations. *See Aubeuf*, 649 F.2d at 114. It is possible that the omitted word in the ALJ's question deviated from her functional capacity findings and, thus, that the vocational expert answered questions that were not relevant to Plaintiff. However, there is no reason to believe that the ALJ deviated from her RFC determination. Aside from this omission, the question the ALJ posed to the vocational expert is identical to the RFC. *See* AR at 17-22, 49. The only other reference to the standing restriction is attorney Jarvis' hypothetical, in which Plaintiff could walk and stand for a combined total of "three to four" hours. *See* AR at 53. The vocational expert answered this hypothetical with a potential occupation, which indicates that, even if the remainder of the vocational expert's testimony were invalidated due to the omission, the ALJ would still have been justified in finding that Plaintiff was not disabled because work suitable for Plaintiff exists in sufficient numbers in the national economy. *See id.*

With no reason to believe that the omission contains a deviation from the final RFC and with the knowledge that work was available even under a more restrictive hypothetical that

Plaintiff's attorney raised, the Court finds that this one-word omission in the transcript did not prejudice Plaintiff and that, without prejudicial error, there is no cause for remand.  *See Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).


## IV. CONCLUSION

Having reviewed the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiff's motion for judgment on the pleadings, *see* Dkt. No. 13, is **DENIED**; and the Court further

**ORDERS** that Defendant's motion for judgment on the pleadings, *see* Dkt. No. 17, is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in favor of Defendant and close this case.

**IT IS SO ORDERED.**

Dated: September  14, 2021
        Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Judge